UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ADVANTOR SYSTEMS CORPORATION,
a Florida corporation,

    Plaintiff,

v.                                                  Case N0. 6:14-cv-533-ORL-31-DAB

DRS TECHNICAL SERVICES, INC., a Maryland
corporation, and DRS TECHNOLOGIES, INC.,
a Delaware corporation,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Advantor Systems Corporation ("Advantor"), by counsel, brings this action against DRS Technical Services, Inc. and DRS Technologies, Inc. (collectively, "DRS"), seeking damages and other appropriate relief arising from DRS's breach of contract and tortious conduct. In support of its claims, Advantor alleges as follows:

### Parties, Jurisdiction and Venue

1. Plaintiff Advantor Systems Corporation is a Florida corporation registered and conducting business in the state of Florida, with its principal place of business at 12612 Challenger Parkway, Suite 300, Orlando, Florida 32826.

2. Defendant DRS Technical Services, Inc. ("DRS TSI") is a Maryland corporation with its principal place of business at 12930 Worldgate Drive, Suite 700, Herndon, Virginia 20170.

3.   Defendant DRS Technologies, Inc. ("DRS Technologies") is a Delaware corporation with its principal place of business at 2345 Crystal Drive, Arlington, Virginia 22202.  DRS Technologies is an affiliate of DRS TSI.

4.   DRS is a direct competitor of Advantor and is in the business or attempting to gain entry into the business of, among other things, designing, installing, supporting, and/or servicing electronic access control and intrusion detection systems (IDS) for United States Government customers.

5.   This Court has jurisdiction pursuant to 28 U.S.C. §1332(a), as the parties are citizens of different states and the damages sought are greater than $75,000.

6.   This Court has personal jurisdiction over the DRS defendants, as they regularly maintain contacts with the state of Florida or otherwise pursuant to Florida's long-arm statute, Florida Statutes § 48.193(1)(a)1, 2, 6, and/or 7, as well as based on their acts in conspiracy in connection with this state.  Moreover, DRS Technologies is engaged in substantial and not isolated activity in this state pursuant to Florida Statute § 48.193(2).  DRS TSI also was and is registered to do business in Florida through the Florida Department of State, having originally filed such registration documents in March 2012.

7.   Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district, and DRS transacts business in this district.

**General Allegations**

8. Advantor is a global security technology integrator focused on and engaged in serving organizations with various security requirements. As a part of its business, Advantor provides security services to its customers using state-of-the-art security technology developed by Advantor, including hardware design, software development, system manufacturing, pre-deployment integration and assembly, turnkey systems installation, and ongoing logistical support. Advantor also designs and manufactures the computer-based systems (proprietary hardware and software) required to meet the specifications and requirements of its customers. The United States Air Force Major Commands and Reserve Components represent the largest single customer group for Advantor. To meet customer requirements, Advantor is one of only three security systems certified by the United States Air Force to protect priority level resources. This includes the equipment and software designed by Advantor along with the installation and the training provided in support. Advantor also provides ongoing logistic support to ensure that the maintenance and ongoing testing of these systems continue to meet the manufacturers' and the Air Force's requirements for lifecycle sustainment.

9. On or about July 17, 2013, DRS TSI and Advantor entered into a written Mutual Nondisclosure Agreement (the "NDA"). (*See* Exhibit A, attached hereto.) The purpose of the NDA was to facilitate the exchange of information between the companies, as the parties contemplated working together on a United States Air Force Electronic Security Systems Maintenance Opportunity -- an opportunity which would be Air Force funded and awarded through the Space and Naval Warfare Systems Command (the "SPAWAR ESS

Project").  Because this project was to be awarded through a SPAWAR vehicle, the parties discussed and understood that DRS would be the prime contractor and Advantor would be the subcontractor upon an award.

10. Among other things, the NDA between DRS TSI and Advantor contained a no-hire clause, which provides, in full:

> The Parties agree that, during the term of this Agreement and for a one (1) year period thereafter, neither Party shall knowingly or actively seek to hire any employee of the other Party.  This restriction shall not prohibit either Party from hiring any person as a result of the use of an independent employment agency (so long as the agency was not directed by such party to solicit such person) or as the result of the use of a general solicitation (such as an advertisement) not specifically directed to employees of the other Party.

Exhibit A at ¶ 15.

11. The NDA also provided that "[u]pon written request of the disclosing Party, the receiving Party shall return all originals, copies, reproductions and summaries of Proprietary Information in the receiving Party's possession or control or, at the disclosing Party's option, destroy and certify to such destruction."  Exhibit A at ¶ 14.

12. On or about September 30, 2013, DRS was awarded the SPAWAR ESS Project.

13. Consistent with the parties' prior discussions about teaming together upon an award, DRS, through its Electronic Security Systems Program Manager, Joseph Coen ("Coen"), sent Advantor on or about October 17, 2013 a proposed "Sub-contract Statement of Work (SOW)" for the SPAWAR ESS Project, showing Advantor as the "Sub-Contractor" and DRS Technologies as the "Prime Contractor."

4

14. The proposed subcontract SOW from DRS further provided, in part, that Advantor "is being tasked to provide support to the bases listed in Section 1.0 of this document[1] with a full-time resident technician provided for each location in 1.0 (a-e). The maintenance technician must be fully qualified, experienced, and certified in Advantor IDS systems. Technician qualifications will be demonstrated through the submission of a resume to the prime contractor for all technicians proposed under this sub-contract."

15. The critical need for DRS to have certified Advantor IDS systems personnel was due, in part, to the SPAWAR ESS Project's solicitation, which required personnel performing annunciator maintenance to have current annunciator certification for IDS components, including annunciator hardware and software used at the identified bases. DRS did not have such personnel certified to install Advantor IDS equipment.

16. Notwithstanding the proposed subcontract SOW that DRS sent to Advantor, DRS TSI, through Coen, later informed Advantor's Senior Vice President, Jeffrey Whirley, in October 2013 that DRS would instead "self-perform" on certain of the Air Force bases under the SPAWAR ESS Project. When asked how DRS would "self perform" in light of the fact DRS lacked the necessary certification, experience, and employees for Advantor IDS systems and equipment, Mr. Coen explained that DRS had employed or offered employment to recent Advantor employees.

---

[1] Such Air Force bases listed on the SOW to be serviced by Advantor technicians included Laughlin AFB, Goodfellow AFB, and Randolph AFB in Texas, Altus AFB and Vance AFB in Oklahoma, Cannon AFB in New Mexico, and Patrick AFB in Florida. Upon information and belief, additional Air Force bases were to be serviced by Advantor under DRS's award of the SPAWAR ESS Project.

17. DRS ultimately provided no work or subcontracting role to Advantor on the SPAWAR ESS Project.

### DRS's Breach of and Tortious Interference with the NDA

18. Axel Alvarez ("Alvarez") is a former Advantor employee who worked as an ESS Administrator. As a condition of his employment with Advantor, Alvarez was bound by a confidentiality agreement preventing him from disclosing Advantor's proprietary and confidential information, as well as a noncompetition and nonsolicitation covenant.

19. Greg Larson ("Larson") is a former Advantor employee who worked as a Senior Field Trainer. As a condition of his employment with Advantor, Larson was bound by a confidentiality agreement preventing him from disclosing Advantor's proprietary and confidential information, as well as a noncompetition and nonsolicitation covenant.

20. John Ellfeldt ("Ellfeldt") is a former Advantor employee who worked as a Lead Installer. As a condition of his employment with Advantor, Ellfeldt was bound by a confidentiality agreement preventing him from disclosing Advantor's proprietary and confidential information, as well as a noncompetition and nonsolicitation covenant.

21. Throughout Larson's, Ellfeldt's, and Alvarez's employment with Advantor, they learned confidential and proprietary business information and methods of Advantor, including, but not limited to, valuable proprietary training information required to perform full preventative and maintenance tasks on assigned contracts, along with certain customer and company confidential information such as: manuals and technical drawings; valuable training on the technical aspects of the software and hardware used by Advantor's customers; quotation software containing Advantor's proprietary cost formulae; proprietary design

information of Advantor's hardware and software; and information related to Advantor's certification-testing standards.

22. On or about November 25, 2013, Alvarez resigned from employment with Advantor with no notice.

23. On or about November 10, 2013, Larson resigned from employment with Advantor with no notice.

24. On or about November 12, 2013, Ellfeldt provided to Advantor written notice of his resignation. Ellfeldt's resignation was effective as of November 22, 2013.

25. Following Alvarez/Larson/Ellfeldt's departures from Advantor, Advantor learned that DRS sought to hire and did, in fact, hire these Advantor employees during their employment with Advantor and within the one-year period of the NDA's no-hire clause.

26. Following Alvarez's departure from Advantor, Advantor learned that DRS hired him in the fall of 2013 and that he, upon information and belief, worked and recruited on behalf of DRS for several weeks while still employed with Advantor and without Advantor's knowledge or consent.

27. Advantor learned after Alvarez/Larson/Ellfeldt's departures that DRS, at least in October 2013 if not other times, DRS posted a job description on Monster.com specifically targeting Advantor employees by mentioning Electronic Security Systems (ESS) programs and requiring experience with Advantor's Intrusion Detection System (IDS) equipment.

28. Advantor also learned that DRS specifically targeted Advantor employees Alvarez and Ellfeldt, knew these were Advantor employees, and hired them anyway notwithstanding the NDA's non-hire provision.

29. With respect to DRS' unlawful recruitment and hiring of Larson, Vanessa Morrison, a recruiter with DRS, contacted Larson in or about October 2013, while Larson was still employed at Advantor, about coming to work at DRS. DRS then directed Larson to Coen of DRS who was coordinating the staffing of the SPAWAR ESS Project for DRS and who subsequently advised Larson to resign from Advantor with no notice.

30. DRS further advised Larson to exit his employment with Advantor in secret because of his access to Advantor's documentation and with the intent that such documentation would be shared with DRS. DRS further told Larson not to worry about his non-competition agreement with Advantor in coming to work at DRS.

31. On Larson's data sheet accompanying his application on DRS Technologies' form on or about October 23, 2013, he specifically noted not to contact Advantor and to "speak to <u>Vanessa Morrison</u> [a recruiter with DRS] regarding the reason why / or <u>Joe Coen</u>." On that same date, Larson advised Morrison and Coen about information Advantor management had shared at Advantor's confidential third quarter meeting relating to Advantor's SPAWAR ESS Project opportunity. Morrison thanked Larson for this information, and directed him to "[c]omplete those [the DRS pre-hire forms] as soon as you can so we can prepare an offer." Larson did, and DRS went forward with hiring Larson in violation and tortious interference with the NDA's non-hire provision.

32. On October 24, 2013, Coen of DRS emailed Larson, telling him that he is "safe to submit this [application] information to Vanessa [Morrison of DRS] ASAP." Coen also expressed his "regret that our HR department did not exercise some discretion" on

contacting ESS recruits' employers and added that "[t]hey will not do that on any future employees that might apply for positions."

33. Morrison of DRS confirmed with Larson later on October 24, 2103 that "[o]ur HR Admin knows that Advantor is not to be contacted." This confirmation followed Larson advising her and Coen that Advantor had questioned Alvarez and Ellfeldt about going to work for DRS after Advantor's HR Director had received calls on behalf of DRS asking about these two Advantor employees. Alvarez falsely denied working for DRS or going to work for DRS when questioned by Advantor in October 2013, and Larson advised Morrison and Coen of DRS on October 24 that "[f]ollowing this chain of events, Axel [Alvarez] called me to see if I had told anyone at the office about our job changes - which of course I am not going to say a word to ruin this."

34. DRS, including at least Coen and Morrison, received various confidential and proprietary information belonging to Advantor from Larson. DRS's receipt of this Advantor material by Larson was unlawfully done and without any authorization from Advantor.

35. DRS terminated Larson in December 2013. However, DRS has refused to destroy all of the proprietary Advantor information that Larson delivered to DRS despite Advantor's request. DRS also has refused to certify as to the destruction of such Advantor proprietary material despite Advantor's request.

36. Following Ellfeldt's departure from Advantor, he went to work for DRS TSI. DRS TSI continues to employ Ellfeldt along with Alvarez and, upon information and belief, other Advantor employees.

9

37. DRS targeted Ellfedlt as a lead installer at Advantor and contacted Ellfedlt, either directly or through a recruiter, in or about October 2013 about coming to work at DRS. Advantor also has discovered that Ellfeldt had a System Authorization Access Request Navy form for DRS, while still employed at Advantor, which referenced IDS equipment work on the SPAWAR ESS Project.

38. While Ellfeldt specifically acknowledged the confidentiality of Advantor's proprietary material and its protection at the beginning of his employment, he notably refused to sign Advantor's Trade Secret Acknowledgment form upon his departure from Advantor.

39. In addition to its unlawful hires of at least Alvarez, Larson and Ellfeldt, DRS continues to knowingly and actively seek to hire other Advantor personnel in violation of and interference with the no-hire clause of the NDA. Most recently, DRS, in March 2014, targeted and sought to hire Advantor technicians working at the Hanscom AFB site on another project on which Advantor currently is performing under a direct contract with the Air Force. DRS also has targeted Advantor personnel located at other AFB sites on other Advantor projects in its recruitment.

40. On March 18, 2014, DRS TSI sent Advantor a 30-day notice of its intent to terminate the parties' NDA. The non-hire restriction of the NDA referenced above remains in effect during the term of the NDA "and for a one (1) year period thereafter." Exhibit A at ¶ 15. In addition, termination of the NDA by DRS does not affect or waive the rights and obligations regarding Proprietary Information already supplied and provided to DRS. *See* Exhibit A at ¶ 3.

## COUNT I - BREACH OF CONTRACT
### (DRS TSI)

41. Advantor incorporates by reference the allegations contained in Paragraphs 1 through 40.

42. Advantor and DRS TSI entered into the NDA, which is a valid contract.

43. The NDA required DRS TSI to not knowingly or actively seek to hire Advantor personnel or directly target and hire Advantor personnel during the term of the NDA and for a period of one (1) year after termination of the NDA.  The NDA further required DRS TSI to return all originals, copies, reproductions and summaries of Advantor's Proprietary Information in its possession or control or, at Advantor's option, destroy Adavantor's Proprietary Information and certify to such destruction.

44. DRS TSI breached the NDA by, among other things:

(i) wrongfully seeking to hire and hiring Advantor personnel, including, but not limited to, Alvarez, Larson, and Ellfeldt during the term of the NDA and a period of one (1) year after termination of the NDA;

(ii) continuing to wrongfully target or recruit other Advantor personnel during this restrictive term of the NDA;

(iii) refusing to destroy all of the proprietary Advantor information that Larson delivered to DRS despite Advantor's request; and

(iv) refusing to certify as to DRS's destruction of such Advantor proprietary material despite Advantor's request.

45. As a result of DRS TSI's material breach of the NDA, Advantor has suffered damages, including but not limited to lost profits and DRS TSI's unjust enrichment, in an amount to be proven at trial.

WHEREFORE, Advantor respectfully requests a judgment against DRS TSI for damages, interest, costs, and any other relief that this Court deems proper.

## COUNT II - TORTIOUS INTERFERENCE WITH CONTRACT
**(DRS Technologies)**

46. Advantor incorporates by reference the allegations contained in Paragraphs 1 through 40.

47. Advantor had a contractual relationship with DRS TSI through the parties' NDA, which included the no-hire clause.

48. DRS Technologies had knowledge of this contractual relationship between Advantor and DRS TSI.

49. DRS Technologies intentionally and tortiously interfered with the parties' NDA, without justification or privilege, which induced or caused DRS TSI's breach of this contract.

50. DRS Technologies acted maliciously and in a willful and wanton manner in tortiously interfering with the NDA between Advantor and DRS TSI warranting an award of punitive damages.

51. As a result of DRS Technologies' tortious interference, Advantor has suffered damages and special damages, including but not limited to, lost profits and DRS Technologies' unjust enrichment, in an amount to be proven at trial.

WHEREFORE, Advantor respectfully requests a judgment against DRS Technologies for damages, including special and punitive damages, interest, costs, and any other relief that this Court deems proper.

### COUNT III - CIVIL CONSPIRACY
### (DRS TSI and DRS Technologies)

52. Advantor incorporates by reference the allegations contained in Paragraphs 1 through 40.

53. DRS TSI and DRS Technologies conspired to unlawfully recruit and hire Advantor's employees, unlawfully compete with Advantor, unlawfully obtain and refuse to return and destroy all of Advantor's Proprietary Information, tortiously interfere with the NDA, and breach and induce the breach of the NDA -- all of which are unlawful acts under Florida law.

54. DRS TSI and DRS Technologies, individually and/or in concert, engaged in several overt acts in further of their conspiracy.

55. DRS TSI and DRS Technologies acted maliciously and in a willful and wanton manner in engaging in their overt acts in furtherance of their conspiracy.

56. Advantor has suffered damages and special damages as a result of these conspirators' actions, including but not limited to, lost profits and DRS's unjust enrichment, in an amount to be proven at trial.

WHEREFORE, Advantor respectfully requests a judgment against DRS TSI and DRS Technologies for damages, including special and punitive damages, interest, costs, and any other relief that this Court deems proper.

## COUNT IV - PERMANENT INJUNCTION
### (DRS TSI and DRS Technologies)

57. Advantor incorporates by reference the allegations contained in Paragraphs 1 through 40.

58. As a result of DRS' conduct -- which includes, but is not limited to, their continued unlawful recruitment and efforts to hire Advantor employees and continued refusal to return and destroy all Advantor Proprietary Information -- Advantor has and will continue to suffer irreparable injury,

59. Remedies available at law, such as monetary damages, are inadequate to fully compensate for that injury. Indeed, the NDA specifically provides that monetary damages may be an insufficient remedy for damages and that Advantor, without waiving any other rights or remedies, shall be entitled to seek injunctive relief. *See* Exhibit A at ¶ 16.

60. Considering the balance of hardships between Advantor and DRS, a remedy in equity is warranted.

61. The public interest would not be disserved by a permanent injunction.

62. Advantor has been aggrieved, and continues to be aggrieved, as a result of DRS's conduct.

WHEREFORE, Advantor respectfully requests that the Court enter a permanent injunction against the DRS Defendants enjoining them from further unlawful recruitment of Advantor employees and from further interference with the NDA and ordering them to return and destroy all of Advantor's Proprietary Information, and any other relief that this Court deems proper.

## JURY DEMAND

In accordance with Fed. R. Civ. P. 38(b), Advantor demands a trial by jury on all issues so triable.

DATED: April 3, 2014                           Respectfully Submitted,

s/ Min K. Cho
Min K. Cho (FBN 754331)
Trial Counsel
HOLLAND & KNIGHT LLP
200 South Orange Avenue, Suite 2600
Orlando, FL 32801
(407) 425-8500
(407) 244-5288 (facsimile)
min.cho@hklaw.com

*Counsel for Plaintiff Advantor Systems Corporation*

#28783657_v3