

## MUTUAL NONDISCLOSURE AGREEMENT BETWEEN

## DRS TECHNICAL SERVICES, INC.

## AND

## ADVANTOR SYSTEMS CORPORATION

This Mutual Nondisclosure Agreement ("Agreement") is made by and between DRS Technical Services, Inc. a Maryland corporation, with an address of 12930 Worldgate Drive, Suite 700, Herndon, VA 20170 ("DRS"), and Advantor Systems Corporation, a Florida corporation, with an address of 12612 Challenger Parkway, Suite 300, Orlando, FL 32826 ("Advantor"). DRS and Advantor may also be referred to hereinafter individually as a "Party" and collectively as the "Parties."

### BACKGROUND

1.  Each Party represents that it possesses competitively valuable proprietary and confidential information which is not generally available to the public, and which the Party desires to protect against disclosure or competitive use (the "Proprietary Information").

2.  Proprietary Information may include, but is not limited to, tangible or intangible information related to a Party's products, processes, methods, ideas, concepts, discoveries, designs, drawings, specifications, techniques, practices, models, diagrams, source code, object code, software, programs, know-how, technical data, research and development, or business and financial data.

3.  The Parties contemplate engaging in business discussions during which it may become necessary to exchange Proprietary Information, and desire to establish a mutual understanding concerning the preservation and safeguarding of such information.

### AGREEMENT

**NOW, THEREFORE**, in consideration of the foregoing, and in express reliance on the mutual covenants and conditions contained herein, the Parties agree as follows:

1.  During the term of this Agreement, the Parties, to the extent of their right to do so, may exchange information that is considered by the disclosing Party to be Proprietary Information. For such information to be considered Proprietary Information and subject to this Agreement, it shall be identified in writing at the time of the disclosure by an appropriate legend, marking, stamp or positive written identification on the face thereof to be Proprietary Information. In order for any Proprietary Information that is exchanged between the Parties orally or visually to be subject to this Agreement, it shall be identified as Proprietary Information to the receiving Party orally at the time of disclosure and in writing within fourteen (14) calendar days after such oral or visual disclosure.

**EXHIBIT A**



2.   Proprietary Information delivered by the disclosing Party to the receiving Party shall be used solely for the purpose of discussing **United States Air Force Electronic Security Systems ("USAF ESS") Maintenance Opportunity** (the "Permitted Purpose").   No other use of Proprietary Information is granted without the prior written consent of the disclosing Party.

3.   This Agreement shall (unless extended by written mutual agreement) automatically terminate on July 31, 2014, but may be terminated earlier by either Party giving thirty (30) days notice in writing to the other Party of its intention to terminate.   Termination shall not, however, affect the rights and obligations in this Agreement with respect to Proprietary Information supplied prior to termination.

4.   From the date of its disclosure until five (5) years after the date of termination of this Agreement, the receiving Party shall protect the disclosing Party's Proprietary Information by using the same degree of care, but no less than a reasonable degree of care, to prevent the dissemination to third parties or publication of the Proprietary Information as the receiving Party uses to protect its own Proprietary Information of a like nature.   The receiving Party shall further restrict disclosure of such Proprietary Information to those of its directors, officers, employees, agents, and advisors (including attorneys, accountants, and financial advisers) who have a need to know and who have been advised of and agreed to the restrictions on disclosure and use contained in this Agreement.   Notwithstanding the period set forth in the first sentence of this section, the Parties may agree in writing to an extended period of protection for certain Proprietary Information.

5.   This Agreement imposes no obligation upon a receiving Party with respect to Proprietary Information which: (a) was in the receiving Party's possession before receipt from the disclosing Party; (b) is or becomes a matter of public knowledge through no fault of the receiving Party; (c) is rightfully received by the receiving Party from a rightfully possessing third party without a duty of confidentiality; (d) is required to be disclosed by court order or other lawful governmental action, but only to the extent so ordered, and provided that the Party so ordered shall notify the disclosing Party of the underlying proceeding in sufficient time so that the disclosing Party may attempt to obtain a protective order; (e) is disclosed by the receiving Party with the disclosing Party's prior written approval in accordance with that written approval; or (f) is independently developed by the receiving Party without access to Proprietary Information exchanged hereunder as provable by competent evidence.

6.   All Proprietary Information is and shall remain the sole and exclusive property of the disclosing Party, and neither Party acquires any license, intellectual property rights, or legal or equitable interest in the other Party's Proprietary Information except for the limited right to make copies as necessary, and in accordance with this Agreement, for the Permitted Purpose.

7.   All Proprietary Information is provided "AS IS," and neither Party makes any warranty regarding the accuracy, appropriateness or reliability of such information.   The entire risk arising out of the use of the Proprietary Information remains with the receiving Party.



8.  The receiving Party shall notify the disclosing Party immediately upon discovery of any unauthorized use or disclosure of Proprietary Information, or any other breach of this Agreement by the receiving Party, and will cooperate with the disclosing Party in every reasonable way to help the disclosing Party regain possession of the Proprietary Information and prevent further unauthorized use or disclosure.

9.  This Agreement shall not be construed as a sales agreement, teaming agreement, joint venture or other similar arrangement; rather, the Parties expressly agree that this Agreement is solely for the purpose of protecting Proprietary Information.

10. Neither Party has an obligation to supply Proprietary Information to the other Party; furthermore, neither Party has an obligation under this Agreement to purchase any item or service from the other Party.

11. The preferred, but nonexclusive, points of contact for the Parties with respect to the exchange of Proprietary Information are:

    **DRS Technical Services, Inc.**          **Advantor Systems Corporation**
    Don Curtis                                Jeffrey J. Whirley
    DCurtis@drs.com                           whirley@advantor.com
    843-327-2096                              407-926-6917

    Proprietary Information may and written notices shall be sent to the points of contact at the addresses on the first page of this Agreement. Each Party may revise its point of contact or address by written notice to the other.

12. The receiving Party represents that it will comply with all applicable import/ export laws including the Export Administration Act, as amended (the "EAA"), (50 U.S.C. App. § 2401-2420), including the anti-boycott and embargo regulations and guidelines issued under the EAA; the International Emergency Economic Powers Act, as amended (50 U.S.C. §§ 1701-1706); the Export Administration Regulations, as amended (15 C.F.R. Parts 730-774); the Arms Export Control Act, as amended (22 U.S.C. § 2751-2799aa-1); the International Traffic in Arms Regulations, as amended (22 C.F.R. Parts 120 - 130); the regulations of the Department of the Treasury, Office of Foreign Assets Control; and regulations, procedures and policies of the United States and any countries having jurisdiction over this Agreement. The receiving Party shall not export, disclose, furnish or otherwise provide any article, technical data, technology, defense service, or technical assistance of the other party to any foreign person or entity, whether within the U.S. or abroad, without obtaining, in advance, (a) appropriate U.S. government export authorization.

13. This Agreement shall apply in lieu of and notwithstanding any specific legend or statement associated with any particular information or data exchanged, and the duties of the Parties shall be determined exclusively by the terms and conditions of this Agreement.



14. Upon written request of the disclosing Party, the receiving Party shall return all originals, copies, reproductions and summaries of Proprietary Information in the receiving Party's possession or control or, at the disclosing Party's option, destroy and certify to such destruction.

15. The Parties agree that, during the term of this Agreement and for a one (1) year period thereafter, neither Party shall knowingly or actively seek to hire any employee of the other Party.  This restriction shall not prohibit either Party from hiring any person as a result of the use of an independent employment agency (so long as the agency was not directed by such Party to solicit such person) or as the result of the use of a general solicitation (such as an advertisement) not specifically directed to employees of the other Party.

16. The receiving Party acknowledges that monetary damages may be an insufficient remedy for damages resulting from the unauthorized disclosure of Proprietary Information and that the disclosing Party shall be entitled, without waiving any other rights or remedies, to seek such injunctive or other equitable relief as may be deemed appropriate by a court of competent jurisdiction.  Nothing herein shall be construed as prohibiting the disclosing Party from pursuing any other available remedy for unauthorized disclosure or for breach or threatened breach of this Agreement.

17. The Parties shall perform their respective obligations hereunder without charge to the other, and neither Party shall assign any rights hereunder or disclose the existence of this Agreement publicly without the prior written approval of the other Party.

18. Regardless of its place of negotiation, execution, or performance, this Agreement shall be enforced and interpreted in accordance with the laws of the Commonwealth of Virginia, without regard to that state's choice of law statutes and provisions.  This Agreement shall be binding on the Parties, their successors and assigns.

19. If any term, provision, covenant or condition of this Agreement is held invalid or unenforceable for any reason, the remaining provisions of this Agreement shall continue in full force and effect as if this Agreement had been executed with the invalid portion eliminated, provided the effectiveness of the remaining portions of this Agreement will not defeat the overall intent of the Parties.  In such a situation, the Parties agree, to the extent legal and possible, to incorporate a replacement provision to accomplish the originally intended effect.

20. This Agreement shall not be amended or modified, nor shall any waiver of any right hereunder be effective unless set forth in a document executed by duly authorized representatives of the Parties.  The failure to exercise any right under this Agreement shall not be deemed to be a waiver of such right, and shall not affect the right to enforce each and every right hereof.  The waiver of any breach of any term, provision, covenant or condition herein contained shall not be deemed to be a waiver of any (a) subsequent breach of such term, provision, covenant or condition or (b) other term, provision, covenant, or condition.



21.  This Agreement constitutes the entire understanding and agreement of and between the Parties relative to the protection of Proprietary Information relating to the Permitted Purpose and supersedes and replaces any and all previous understandings, commitments or agreements, oral or written.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be duly executed in duplicate originals by each Party's duly authorized representative, effective as of the day and year last written below (the "Effective Date").

DRS Technical Services, Inc.                    **Advantor Systems Corporation**

Signature _____      Signature _____

Name      Robert K. Lindsey           Name       Jeffrey J. Whirley

Title     Director of Contracts        Title      Senior Vice President

Date      7/17/2013                    Date       16-Jul-2013