# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ADVANTOR SYSTEMS
CORPORATION,

                    Plaintiff,

v.                                                    Case No:   6:14-cv-533-Orl-31DAB

DRS TECHNICAL SERVICES, INC. and
DRS TECHNOLOGIES, INC.,

                    Defendants.
_____

# ORDER

This matter is before the Court on the Defendants, DRS Technical Services, Inc., ("DRS

TSI") and DRS Technologies Inc.'s, ("DRS Technologies") Motion to Dismiss Counts II, III, and

IV of Complaint (Doc. 17), the Plaintiff's Response in Opposition ("Response") (Doc. 19) and

Defendants' Reply to the Response ("Reply") (Doc. 26).

## I.      Background

The issue before the Court is whether Defendant DRS Technologies can be liable for

interfering with a contract between the Plaintiff and DRS TSI, one of DRS Technologies' affiliated

businesses, under a tortious interference or civil conspiracy claim. The Plaintiff, Advantor Systems

Corp., ("Advantor") provides security services to its customers. (Doc. 1 ¶ 8). Defendant DRS TSI

is a close affiliate of DRS Technologies,[1] and both are direct competitors of Advantor. On or about

---

[1] From the Defendant's Reply, it appears that DRS Technologies wholly owns DRS Defense
Solutions, LLC, which wholly owns DRS TSI. (Doc. 26 at 4). The Plaintiff's Response notes part
of this relationship, specifically that DRS Defense Solutions, LLC, owns DRS TSI, however it does
not address how those two companies are related to DRS Technologies. (*See* Doc. 19 at 10).
Regardless, the relationship between DRS TSI and DRS Technologies is not made clear in the

July 17, 2013, DRS TSI and Advantor entered into a Mutual Nondisclosure Agreement (the "NDA") after they considered working together on a project for the United States Air Force ("USAF"). (Doc. 1-1). The NDA contained a no-hire clause which stipulated that neither party would actively seek to hire any employee of the other party during the term of the NDA and for one year thereafter. (*Id.* ¶ 15). Shortly after signing the agreement, DRS TSI informed Advantor that instead of working together, it would "self-perform" on certain USAF bases. (Doc. 1 ¶ 16). When Advantor asked DRS TSI how it would "self perform" despite lacking the necessary certification, experience, and employees to complete the projects alone, it explained that DRS Technologies had employed or offered employment to recent Advantor employees.[2] (*Id.* ¶¶ 16-17, 25-33). Advantor then filed this suit against the Defendants, seeking to enforce the NDA and charge DRS Technologies with tortious interference with the NDA (Count II). Advantor also alleges that the Defendants conspired to unlawfully recruit and hire Advantor's employees (Count III). In the Motion to Dismiss, DRS Technologies claims that it cannot be liable for tortious interference because it has the privilege to interfere with its affiliate's agreements and no conspiracy occurred because an entity cannot conspire with its own agents.

## II.     Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R.

---

Complaint, which for the most part, lumps DRS Technologies and DRS TSI together.

[2] For purposes of ruling on the Motion to Dismiss, the Court assumes the NDA no-hire provision was valid and, in fact, breached. This assumption is only for the purposes of evaluating DRS Technologies' Motion to Dismiss Counts II, III and IV and in no way determines its obligations or liabilities regarding Count I.

Civ. P. 10(c); *see also GSW, Inc. v. Long Cnty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement' of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

### III.   Analysis

#### A.   Tortious Interference

Advantor learned that DRS Technologies hired or sought to hire several Advantor employees, which forms the gravamen of Advantor's tortious interference claim. (*See* Doc. 1 ¶¶ 22-28). DRS Technologies argues that it had the privilege to interfere with the NDA, thus the purported interference was justified and the claim fails to meet the third element of the cause of action. *See Ingenuity, Inc. v. Linshell Innovations Ltd.*, No. 6:11–cv–93–Orl–28KRS, 2014 WL 1230695 at *4

(M.D. Fla. Mar. 25, 2014) (intentional and unjustified interference is the third element of tortious interference with a business relationship[3]). For the interference to be unjustified, DRS Technologies must be a stranger to the Advantor-DRS TSI relationship. *See Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1289 (S.D. Fla. 2010) (dismissing claim for tortious interference with business relationship). "An interested third-party accused of tortious interference is essentially 'interfering' with its own interests. Th[at] is not interference; it is freedom of contract." *Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1095 (Fla. Dist. Ct. App. 2009).

The Complaint asserts that DRS TSI is affiliated with DRS Technologies. However, the exact relationship between the two Defendants is not clear from the Complaint, which frequently conflates DRS TSI and DRS Technology collectively referring to them as, simply, "DRS." (*See* Doc. 1 at 1). What is clear is that DRS TSI and DRS Technologies work together and are direct competitors of Advantor in the business of intrusion detections systems. (*Id.* ¶ 4 (conflating DRS TSI and TRS Technologies)). The NDA was allegedly formed to permit DRS (both Defendants) to communicate with Advantor about working with DRS on an intrusion detection system contract for the USAF. (*Id.* ¶ 9). Yet, Advantor only bound DRS TSI by the terms of the NDA. Accordingly, the allegations in the Complaint demonstrate DRS Technologies was an interested party to the NDA, and had the privilege to interfere with that agreement.

However, the privilege to interfere is not unlimited. "[P]arties are disqualified from asserting the privilege if they act maliciously." *CSDS Aircraft Sales & Leasing, Inc. v. Lloyd Aereo Boliviano Airlines*, No. 09–CIV–22274, 2011 WL 1559823 at *5 (S.D. Fla. Apr. 22, 2011). The privilege to interfere may be eliminated when an act is undertaken out of pure malice or if improper methods

---

[3] Tortious interference with a contract and tortious interference with a business relationship are essentially the same cause of action, except that one involves a contract. *MDT Pers., LLC v. Camoco, LLC*, No. 8:10–cv–2545–T–33MAP, 2010 WL 5535066 at *2 (M.D. Fla. Dec. 8, 2010).

were used. *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004).   Plaintiff's

Response asserts the malice exception applies to this case, and accordingly, the question becomes:

Did DRS Technologies act out of malice or an improper purpose, according to the Complaint?

> Malice may be shown indirectly "by proving a series of acts which, in their context or in light of the totality of the circumstances, are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will or other bad motive."

*Slip-N-Slide Records, Inc. v. TVT Records, LLC.*, No. 05-21113-CIV, 2007 WL 3232274 at *3 (S.D.

Fla. Oct. 31, 2007) (quoting *Gregg v. U.S. Indus. Inc.*, 887 F.2d 1462, 1476 (11th Cir. 1998)). In

examining what constitutes improper methods, Florida Courts have stated:

> In those circumstances in which there is a qualified privilege to interfere with a business relationship, the privilege carries with it the obligation to employ means that are not improper. In other words, the privilege does not encompass the purposeful causing of a breach of contract. The justification for intentional interference depends upon a balancing of the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances among which the methods and means used and the relation of the parties are important.

*McCurdy v. Collis*, 508 So. 2d 380, 384 (Fla. Dist. Ct. App. 1987) (citations and quotations omitted).

The allegations do not demonstrate that DRS Technologies acted solely out of malice, as it

plainly had a business interest in hiring Advantor employees skilled in the field of intrusion detection

systems. [4]  Further, hiring a competitor's employees is not, by itself, improper.  Recruiting

competitor's employees is a regular business practice. The Court surmises that this is precisely why

---

[4]  Insofar as Advantor alleges a tortious interference with the NDA through the unauthorized transfer of Advantor's proprietary information (*see* Doc. 1 ¶¶ 34-35) it is not alleged that either of the DRS entities did any *act* to procure this information, let alone that it acted out of malice or improperly. It only says that DRS "received various confidential and proprietary information belonging to Advantor . . . ." (*Id.*). Further, the allegations related to retention of the purportedly confidential information are so vague that they are insufficient to demonstrate malice or improper purpose.

Advantor sought the no-hire provision in the NDA. However, Advantor did not procure the same commitment from DRS Technologies that it did from DRS TSI. Further, the social and private objectives advanced by permitting employees to move to a new employer are as substantial as they are obvious, further supporting the proposition that DRS Technologies did not act with improper purpose. Accordingly, because the Complaint alleges that the DRS entities are related, DRS Technologies was an interested party to the NDA and had the privilege to interfere with it, and its alleged interference was not improper or motivated by malice.

### B. Conspiracy

In Count III, the Plaintiff attempts to bring a civil conspiracy claim against the Defendants— which requires an agreement between two or more parties. *See e.g.*, *Vista Marketing, LLC v. Burkett*, No. 8:12-cv-1640-T-30TBM, 2014 WL 582876 at *3 (M.D. Fla. Feb. 13, 2014) (listing the elements of civil conspiracy). The Defendants argue that the claim fails to meet the first element due to the intracorporate conspiracy doctrine. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984) (holding that "[t]he officers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals"); *see also Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). As the Supreme Court noted:

> [T]here can be little doubt that the operations of a corporate enterprise organized into divisions must be judged as the conduct of a single actor [and] the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise.

*Copperweld*, 467 U.S. at 770-71); *see also AstroTel, Inc. v. Verizon Florida*, LLC, 8:11-CV-2224-T-33TBM, 2012 WL 1581596, at *10 (M.D. Fla. May 4, 2012) (quoting *Copperweld*). Since DRS Technologies and DRS TSI are closely affiliated, any agreement between DRS TSI and DRS Technologies is functionally the decision of one enterprise, not an agreement between two

independent minds. *See Altenel, Inc. v. Millennium Partners, LLC.*, 947 F. Supp. 2d 1357, 1373 (S.D. Fla 2013) (dismissing conspiracy claim against defendants operating a joint enterprise).

### C.  Injunction

Finally, Plaintiff attempts to bring a separate cause of action for a permanent injunction in Count IV. An injunction is a remedy, not a separate cause of action. *Fastway Moving & Storage, Inc. v. Ugarte*, 13-60832-CIV, 2013 WL 3927687 at *2 (S.D. Fla. July 29, 2013) (noting that injunctions are not causes of actions, but remedies). Accordingly, Count IV will be dismissed as a separate count. This dismissal, however, does not preclude the Plaintiff from requesting this remedy provided it is supported by an underlying cause of action.

It is therefore,

**ORDERED**, Defendant's Motion to Dismiss (Doc. 17) Counts II, III, and IV is **GRANTED**, and those claims against DRS Technologies are dismissed.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 29, 2014.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party